UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| JANET LEE RASMUSSEN,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES GREG SWANSON, OFFICIAL CAPACITY,<br><br>Defendant. | 3:22-CV-03016-RAL<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING |

Plaintiff Janet Lee Rasmussen filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Rasmussen moves for leave to proceed in forma pauperis and has filed a financial affidavit. Doc. 2. Rasmussen has also filed a motion to preserve evidence. Doc. 4. This Court now screens Rasmussen's complaint under 28 U.S.C. § 1915(e)(2).

I.   **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Rasmussen's

financial affidavit, the Court finds that she has insufficient funds to pay the filing fee. Thus, Rasmussen's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

**II.     1915 Screening**

    **A.     Factual Allegations of Rasmussen's Complaint**

Rasmussen claims that she was assaulted by Stanley County Chief Deputy Greg Swanson in the second-floor hallway of the Stanley County Courthouse on September 6, 2022. Doc. 1 at 4. She claims that Swanson was acting as a Stanley County Deputy or Sixth Judicial Circuit Court Officer at the time. Id. She states that she was attending a motion hearing for her husband's pending state criminal case and that she "request[ed] Deputy Swanson not be so rough with her husband who was in Deputy Swanson's custody at the time when he preemptively grabbed [her] arm forcefully and pushed her back." Id. Rasmussen alleges that she did not assault or threaten Swanson in any way and that she was not in custody at the time. Id. She also alleges that "[m]ost of the Stanley County Sheriff's Office employees were present in the hallway and did not react to Defendant Swanson's request of, 'Keep her away from me.'" Id.

Rasmussen asserts that Stanley County Sheriff's Office employees "have developed a practice or custom to preemptive actions towards [her] household or family." Id. She states that her husband, Wyatt W. Rasmussen, has been tased three times in two arrests by Stanley County Sheriff's Office employees. Id. Specifically, she states that charges for the first incident, in which he was tased twice, were dismissed by the prosecutor and that she was attending a motion hearing for her husband's criminal charges from the second incident when she was assaulted by Swanson. Id. Rasmussen claims that, similar to her own encounter with Swanson, her husband was not resisting or threatening officers during either incident that he was tased. Id.

2

Rasmussen brings claims against Swanson in his official capacity. Id. at 1. She claims that he used excessive force in violation of the Fourth Amendment. Id. She also claims that he assaulted her in violation of SDCL § 22-18-1 and that he intentionally caused her emotional distress. Id. at 4, 6. Rasmussen alleges that the force used by Swanson caused muscle bruising and resulted in her placement on work restrictions by her medical provider. Id. at 4. Rasmussen seeks to require additional training for Swanson. Id. She asks this Court "[t]o make an example of this Deputy Sheriff / Court Officer so the County takes the appropriate measures to ensure this does not happen again[.]" Id. at 6. She also claims $1,000,000 in damages for medical expenses and emotional harm. Id. at 4, 6.

**B.    Legal Standard**

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does

not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court will now assess each individual claim under 28 U.S.C. § 1915.

4

C.     **Rasmussen's Causes of Action**

1.     **Fourth Amendment Claim**

a.     **Official Capacity Claim for Money Damages**

Rasmussen brings a Fourth Amendment excessive force claim against Swanson in his official capacity for money damages. Doc. 1 at 1, 4, 6. Swanson was an employee of the Stanley County Sheriff's Office at the time of the incident in question. See id. at 4. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Rasmussen's official capacity claim against Swanson is equivalent to a claim against Stanley County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)).

A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Rasmussen alleges that Stanley County Sheriff's Office employees "have developed a practice or custom to preemptive actions towards [her] household or family." Doc. 1 at 4. She cites two instances, along with the incident in question, as evidence of this practice or custom. Id. While she does not provide dates for the prior instances, the case numbers suggest the incidents likely occurred in 2012 and 2021. See id. Although Rasmussen claims a practice or custom, she does not allege sufficient instances of misconduct to establish "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" as required under Brewington to bring a claim for an unofficial custom, nor does she allege that policymaking officials have been deliberately indifferent to or have tacitly authorized the conduct after having been provided notice. See id.; 902 F.3d at 801 (internal quotation omitted). As to an official policy claim, Rasmussen makes no allegations that the incidents of excessive force stemmed from an official Stanley County Sheriff's Office policy. See Doc. 1 at 4-5; Clay, 815 F.2d at 1170. Thus, Rasmussen's Fourth Amendment excessive force claim against Swanson in his official capacity for money damages is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

b.  **Official Capacity Claim for Injunctive Relief**

Rasmussen brings a Fourth Amendment excessive force claim against Swanson in his official capacity for injunctive relief. Doc. 1 at 1, 4, 6. "To establish a Fourth Amendment violation for her § 1983 claim, [the plaintiff] must demonstrate both that [the defendant] seized her within the meaning of the Fourth Amendment and that the seizure was unreasonable." Andrews v. Fuoss, 417 F.3d 813, 816 (8th Cir. 2005) (citing Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999)). "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" Id. at 817 (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (omission in original)). "To justify a limited and momentary detention of a person without violating the Fourth Amendment's proscription against an unreasonable seizure, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id. (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).

Here, Rasmussen alleges facts sufficient to state a Fourth Amendment excessive force claim against Swanson in his official capacity for injunctive relief. See Doc. 1 at 4-5. She alleges that Swanson grabbed her and pushed her, a use of physical force that in some sense restrained her liberty. Id. at 4; see Andrews, 417 F.3d at 817 (citing Graham, 490 U.S. at 395 n.10). According to Rasmussen, although she made a request to Swanson to "not be so rough with her husband" before he grabbed and pushed her, she did not assault or threaten Swanson in any way. Doc. 1 at 4. Thus, she alleges that Swanson's seizure of her was unreasonable. See id.; Andrews, 417 F.3d at 817. Because Swanson has not yet responded to this lawsuit, he has not had an opportunity to "point to specific and articulable facts" to justify his seizure of Rasmussen. See Andrews, 417

7

F.3d at 817 (quoting Terry, 392 U.S. at 21). Rasmussen's Fourth Amendment excessive force claim against Swanson in his official capacity for injunctive relief survives § 1915 screening.

### 2. State-Law Assault Claim

Rasmussen alleges that Swanson committed an assault under SDCL § 22-18-1.[1] Doc. 1 at 4. Construing her complaint liberally, Rasmussen brings a state-law tort claim for assault and battery against Swanson. See id. Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action [over which this Court has original jurisdiction] that they form part of the same case or controversy[.]" Rasmussen's state-law assault and battery claim is part of the same "case or controversy" as her Fourth Amendment excessive force claim. Thus, this Court appears to have supplemental jurisdiction over her state-law assault claim.

Under South Dakota law, a plaintiff bringing a civil claim for assault and battery must show that the defendant "(a) [intended] to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact; and, (b) an offensive contact with the person of the other directly or indirectly results." Stratmeyer, 649 N.W.2d at 925-26 (quoting Reeves v. Reiman, 523 N.W.2d 78, 82 (S.D. 1994) (alteration in original)). Further, "[t]he victim need not show a specific intent or design to cause the contact or to cause any singular and intended harm. What is forbidden is the intent to bring about the result which invades another's interests in a manner that the law forbids." Id. at 926 (quoting Reeves, 523 N.W.2d at 82).

---

[1] To the extent that Rasmussen seeks to bring a § 1983 claim for violation of SDCL § 22-18-1, such a claim cannot be brought because "[i]ndividuals cannot institute a civil lawsuit to enforce criminal laws." See Foxhoven v. Stacy, 2023 WL 2479770, at *5, 2023 U.S. Dist. LEXIS 42573, at *14 (D.S.D. Mar. 10, 2023). Because a civil remedy exists for Rasmussen's assault claim, see Stratmeyer v. Engberg, 649 N.W.2d 921, 925-26 (S.D. 2002), this Court need not consider whether SDCL § 22-18-1 grants a private right of action. Rasmussen's claim under SDCL § 22-18-1 is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(b)(ii).

Here, Rasmussen alleges facts sufficient to state a state-law claim for assault and battery against Swanson. See Doc. 1 at 4-5. She alleges that Swanson forcefully grabbed her and pushed her. Id. at 4. She further alleges that this contact was intentional, claiming that Swanson acted preemptively. See id. Thus, she alleges that Swanson intended to cause an offensive contact and that an offensive contact actually occurred. See id.; Stratmeyer, 649 N.W.2d at 925-26 (citing Reeves, 523 N.W.2d at 82). Rasmussen's state-law civil assault and battery claim against Swanson survives § 1915 screening.

### 3. State-Law Intentional Infliction of Emotional Distress Claim

Rasmussen alleges that Swanson "intentionally caus[ed] emotional distress to [her] in this matter." Doc. 1 at 4. Construing her complaint liberally, Rasmussen brings a state-law tort claim for intentional infliction of emotional distress. See id. at 4, 6. Again, 28 U.S.C. § 1367(a) grants this Court supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the action over which this Court has original jurisdiction. Rasmussen's state-law intentional infliction of emotional distress claim is part of the same "case or controversy" as her Fourth Amendment excessive force claim. Thus, this Court could have supplemental jurisdiction over her state-law intentional infliction of emotional distress claim against Swanson if Rasmussen in fact has stated such a claim.

Under South Dakota law, a plaintiff bringing a claim for intentional infliction of emotional distress must demonstrate "(1) extreme and outrageous conduct by the defendant; (2) that the defendant intended to cause severe emotional distress; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress must result." Niemitalo v. Seidel, 972 N.W.2d 115, 120 n.1 (S.D. 2022) (quoting Christians v. Christians, 637 N.W.2d 377, 382 (S.D. 2001)). Here, Rasmussen fails to allege facts sufficient to

state a claim for intentional infliction of emotional distress because she fails to allege the severe emotional distress necessary. See Doc. 1 at 4-6. Although Rasmussen describes the physical injury caused by the alleged assault and her desire to stop Swanson and other Stanley County Sheriff's Office employees from assaulting her and her husband in the future, she makes no mention of emotional harm, let alone severe emotional distress. See id. Thus, Rasmussen's state-law intentional infliction of emotional distress claim against Swanson is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.    Rasmussen's Motion to Preserve Evidence

Rasmussen has filed a motion requesting that this Court order the Stanley County Auditor's Office preserve video evidence of her encounter with Swanson. Doc. 4. Under Federal Rule of Civil Procedure 37(e) and the common-law duty to preserve evidence, any electronic evidence in the possession of Swanson must be preserved once a party has notice of suit. See Blazer v. Gall, 2019 WL 3494785, at *3 (D.S.D. Aug. 1, 2019) (citation omitted). But the duty to preserve evidence is an obligation of the parties, and the Stanley County Auditor's Office is not a party in this action. See E*Trade Sec. LLC v. Deutsche Bank AG, 230 F.R.D. 582, 588 (D. Minn. 2005) ("The obligation to preserve evidence begins when a *party* knows or should have known that the evidence is relevant to future or current litigation." (emphasis added)). Thus, because the Stanley County Auditor's Office is not a party in this action, Rasmussen's motion to preserve evidence, Doc. 4, is denied. To the extent that Swanson has any electronic evidence relevant to this lawsuit, he has to preserve that evidence under Federal Rule of Civil Procedure 37(e) and the common-law duty to preserve evidence upon having notice of this suit. See Blazer, 2019 WL 3494785, at *3.

IV. **Order**

Accordingly, it is

ORDERED that Rasmussen's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that Rasmussen's Fourth Amendment excessive force claim against Swanson in his official capacity for money damages is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(b)(ii). It is further

ORDERED that Rasmussen's Fourth Amendment excessive force claim against Swanson in his official capacity for injunctive relief survives § 1915 screening. It is further

ORDERED that Rasmussen's assault claim under SDCL § 22-18-1 is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(b)(ii). It is further

ORDERED that Rasmussen's state-law assault and battery claim against Swanson survives § 1915 screening. It is further

ORDERED that Rasmussen's state-law intentional infliction of emotional distress claim against Swanson is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(b)(ii). It is further

ORDERED that Rasmussen's motion to preserve evidence, Doc. 4, is denied. It is further

ORDERED that the Clerk shall send a blank summons form and United States Marshal Service Form (Form USM-285) to Rasmussen so that she may complete the form to cause the complaint to be served upon defendant Swanson. It is further

ORDERED that Rasmussen shall complete and send the Clerk of Court a separate summons and USM-285 form for defendant Swanson. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summons, together with a copy of the complaint, Doc. 1, and this order upon defendant Swanson. It is further

ORDERED that defendant Swanson will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service unless this Court enlarges the time to do so. It is finally

ORDERED that Rasmussen will keep the court informed of her current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

DATED March 29th, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE