UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JANET LEE RASMUSSEN,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES GREG SWANSON, IN HIS OFFICIAL CAPACITY;<br><br>Defendant. | 3:22-CV-03016-RAL<br><br><br>OPINION AND ORDER GRANTING SUMMARY JUDGMENT |

This case arises out of a September 6, 2022 confrontation at the Stanley County Courthouse in Fort Pierre, South Dakota, between Plaintiff Janet Lee Rasmussen ("Rasmussen") and Stanley County Chief Deputy Sheriff Charles Greg Swanson ("Swanson"). Following the encounter, Rasmussen filed a pro se lawsuit under 42 U.S.C. § 1983 against Swanson in his official capacity. Doc. 1. This Court screened Rasmussen's complaint under 28 U.S.C. § 1915A, Doc. 8, dismissing all except two claims: (1) a claim for injunctive relief against Swanson in his official capacity for use of excessive force and (2) a state-law assault and battery claim. Doc. 7 at 11. Swanson has moved for summary judgment, Doc. 31, which Rasmussen opposed, Doc. 36. After watching a video recording briefly showing at a distance part of the incident and taking any facts not depicted on video in the light most favorable to Plaintiff Rasmussen, this Court concludes that Swanson is entitled to summary judgment because there is no Monell claim and because Deputy Swanson's conduct did not constitute excessive force as a matter of law. Accordingly, this Court grants summary judgment for Swanson.

1

I.      **Standard on Motion for Summary Judgment**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); McManemy v. Tierney, 970 F.3d 1034, 1037 (8th Cir. 2020). Rule 56(a) places the burden on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "To be a material fact, the factual issue must potentially affect the outcome of the suit under the governing law." Kuntz v. Rodenburg, LLP, 838 F.3d 923, 925 (8th Cir. 2016) (quoting Depositors Ins. v. Wal-Mart Stores, Inc., 506 F.3d 1092, 1094 (8th Cir. 2007)). The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A), (B); see also Gacek v. Owens & Minor Distrib., 666 F.3d 1142, 1145–46 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Weeks v. City of Lake Norden, 20-CV-01029, 2024 U.S. Dist. LEXIS 113011, at *4 (D.S.D. May 20, 2024) (quoting Landon v. N.W. Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995), abrogated in part by Torgerson v. City of Rochester, 643 F.3d 1031, 1043–44 (8th Cir. 2011)). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in his or her pleading but "must set forth specific facts showing [the existence of] a genuine issue for trial." Gacek, 666 F.3d at 1145–46 (citing Anderson, 477 U.S. at 256); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials).

2

In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Taylor v. Riojas, 592 U.S. 7, 7 n.1 (2020) (per curiam); Intel Corp. Inv. Pol'y Comm. v. Sulyma, 589 U.S. 178, 190 (2020). But if the record contradicts the non-moving party's account "so that no reasonable jury could believe it," then such an assumption in favor of their version of facts is not made. Scott v. Harris, 550 U.S. 372, 380 (2007) (holding that lower court should have viewed facts in light depicted by videotape, which discredited non-movant's version of events). "Such [] contradictions arise, for example, when video footage directly contradicts a party's testimony." Setchfield v. St. Charles Cnty., No. 23-2236, 2024 U.S. App. LEXIS 18948, at *8 (8th Cir. July 31, 2024) (citing Wallingford v. Olson, 592 F.3d 888, 892 (8th Cir. 2010)).

## II. Factual and Procedural Background

On September 6, 2022, Rasmussen accompanied her husband Wyatt Rasmussen ("Wyatt") to the Stanley County Courthouse for a motions hearing in an unrelated state criminal case, "Stanley County Criminal Case #58CR 21-64." Doc. 1 at 4. According to Rasmussen, she accompanied her husband to be "present as a witness to try to protect, or prevent mistreatment." Doc. 37 at 1. A few days before the hearing, the Stanley County Sheriff's Office received an arrest warrant for Wyatt signed by the Honorable Bridget Mayer, a State Sixth Circuit Judge, for "contempt of court and child support non-payment." Doc. 32-1 at 8. The Sheriff's Office decided to execute the warrant and arrest Wyatt after his September 6 motions hearing. Id. at 4, 8. In addition to executing the arrest warrant on Wyatt, the sheriff's office was responsible for transporting two other prisoners back to the Hughes County Jail. Id. at 6, 7.

Deputy Swanson, who was working courtroom security at the time, remained in the courtroom during Wyatt's hearing while Sheriff Bradley Rathbun, Deputy Jon Keefe, and Deputy Dustin Baxter waited in the hallway to assist with prison transport. Id. at 8. Following the hearing, as Wyatt prepared to leave, Deputy Swanson stopped him and informed him that he was under arrest pursuant to Judge Mayer's warrant. Id. at 4. After securing Wyatt in handcuffs, Deputy Swanson instructed the two other prisoners awaiting transport to file out of the courtroom ahead of Wyatt and himself. Id. at 5. While escorting Wyatt and the other prisoners out of the courtroom, Rasmussen tried to place herself between Wyatt and Deputy Swanson. Id. at 5; Doc. 32-5 (describing how Rasmussen tried to "wedge herself between Deputy Swanson and Wyatt"). Deputy Swanson instructed her to stay back, but she again moved toward them. Doc. 32-1 at 5. So, Deputy Swanson used his "free hand and forearm to hold her back." Id. Rasmussen responded, "not to touch her," and Wyatt began acting in a non-cooperative manner, dipping his shoulder into Deputy Swanson and attempting to pull away. Id.; Doc. 32-4 at 3.

When Wyatt, Deputy Swanson, and the two other prisoners exited the courtroom, Rasmussen was right on Deputy Swanson's heels. Doc. 32-1 at 6; Swanson 0019 at 00:00:18–00:00:21.[1] Deputy Baxter and Deputy Keefe took the two prisoners and escorted them out of the courthouse to Deputy Keefe's vehicle. Doc. 32-1 at 6; Swanson 0019 at 00:00:21. Deputy Swanson once again instructed Rasmussen to back away, but it was to no avail. Doc. 32-1 at 6. Sheriff Rathbun then intervened. Id. Sheriff Rathbun stuck his arm between Rasmussen and Wyatt to create space, again instructing Rasmussen to move back. Id.; see Swanson 0019 at 00:00:21. Sheriff Rathbun returned to assisting Deputy Swanson with Wyatt, who continued to resist the

---

[1] All video citations will refer to the videos from the flash drive labeled "Exhibit 1" that was submitted with Doc. 32. The citation will state the video title as stated on the flash drive followed by a citation to the time stamp in the format of hours, minutes, and seconds.

4

...

officers' efforts to escort him out of the courthouse. Doc. 32-1 at 7; see Swanson 0018 at 00:02:30–00:03:00. At one point, Wyatt let his legs go out from under him. Doc. 32-1 at 5, 6, 7, 8; Doc. 32-4 at 3; Swanson 0018 at 00:02:45–00:02:55. Ultimately, Deputy Swanson and Sheriff Rathbun were able to place Wyatt in Deputy Baxter's patrol vehicle, who transported him to the Hughes County Jail. Doc. 32-1 at 8; Swanson 0017 at 00:03:13. On October 19, 2022, Rasmussen filed a complaint pursuant to 42 U.S.C. § 1983, alleging a violation of her Fourth Amendment right against excessive use of force.

## III. Discussion

### A. Standing to Pursue Injunctive Relief

Rasmussen lacks standing to pursue her claim for injunctive relief. As the plaintiff, Rasmussen bears the burden of showing that she has standing under Article III of the Constitution to request injunctive relief. Park v. Forest Serv. of U.S., 205 F.3d 1034, 1037 (8th Cir. 2000). To establish standing, Rasmussen must illustrate an injury in fact, a causal connection between the injury and the defendant's alleged conduct, and a likelihood that the remedy she seeks will redress her alleged injury. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102–04 (1998). When a plaintiff seeks injunctive relief, "'the injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm," Park, 205 F.3d at 1037, a requirement Rasmussen cannot meet.

The Supreme Court of the United States has consistently observed that "past wrongs do not in themselves amount to [the] real and immediate threat of injury necessary to make out a [live] case or controversy" for a party seeking injunctive relief. City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983); see O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if

unaccompanied by any continuing, present adverse effects."). To establish a case or controversy on which injunctive relief may be granted, the plaintiff must show "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." O'Shea, 414 U.S. at 502. And a plaintiff's speculation that she may suffer injury in the future is inadequate. McClanahan v. Young, No. 13-CV-04140, 2016 WL 520983, at *11 (D.S.D. Feb. 5, 2016) (citing Lyons, 461 U.S. at 102). Absent a showing of any real or immediate threat that Stanley County will employ excessive force against Rasmussen again, injunctive relief is unavailable. Lyons, 461 U.S. at 111.

A plaintiff's "assertion that he [or she] may again be subject to illegal [force] does not create the actual controversy that must exist for [injunctive relief] to be entered." Id. at 104. In Lyons, police officers conducted a traffic stop and, allegedly without provocation or justification, seized the driver and instituted a chokehold that damaged his larynx and caused him to lose consciousness. Id. at 98. The driver sued the City of Los Angeles and the four police officers involved, seeking both monetary damages and injunctive relief against the Los Angeles Police Department's use of chokeholds. Id. Although the Supreme Court held that Lyons could maintain a suit for money damages based on a past harm, the Court held that he did not have standing to seek an injunction. Id. at 109. The Court reasoned that "any future threat to Lyons from the City's policy [on chokeholds] or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again [use a chokehold] without any provocation." Id. at 106.

Similar to the plaintiff in Lyons, Rasmussen cannot show a real and immediate threat of unlawful use of force. Any future incident of unlawful force against Rasmussen rests on the

presumption that Rasmussen will act in a way perceived as illegal, the apparently illegal conduct will lead to an encounter with law enforcement, and law enforcement will use an excessive degree of force against Rasmussen during the encounter. Such speculation is not enough to establish the existence of a present, live controversy. Id. at 105. Rasmussen also demonstrates no police behavior constituting a systematic pattern of constitutional wrongdoing that would warrant an injunction.[2] See Allee v. Medrano, 416 U.S. 802, 812 (1974) (approving injunctive relief when there is a pattern of unconstitutional police conduct); but see Rizzo v. Goods, 423 U.S. 362, 375 (1976) (distinguishing between conduct involving patterns of unconstitutional misconduct and discrete occurrences).

Lastly, granting an injunction would require Rasmussen to actually have suffered an on-going use of excessive force or face a real and immediate threat of future use of excessive force. Unlike in Lyons, in which the court found the officer's use of a chokehold to be illegal, Deputy Swanson's use of force was not excessive under the circumstances. Rather, it fell within the spectrum of force reasonably necessary to safely execute his official duties, which at that time involved escorting arrestees (one being Rasmussen's husband) to a transport vehicle. So even if Rasmussen behaves in a way to trigger future use of force akin to what Deputy Swanson did, such a situation would not pose any threat of future constitutional deprivations. Accordingly, Rasmussen cannot show any real or immediate threat of future excessive force and therefore lacks the standing necessary to pursue a claim of injunctive relief. Thus, this Court grants summary judgment for Defendant on Rasmussen's request for such relief.

---

[2] Rasmussen's filings make occasional reference to Stanley County tasing her husband, Wyatt, during two arrests as evidence of a systematic pattern of constitutional wrongdoing. This Court, however, is quite familiar with one of those incidents from a previous lawsuit and determined that Stanley County's use of a taser on Wyatt during that encounter was not unconstitutional.

7

### B. Section 1983 Claim

Even if Rasmussen could demonstrate standing, she does not have a viable § 1983 claim against Deputy Swanson in his official capacity. Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Governmental entities like counties, municipalities, and their employees are suable "persons" under § 1983, and the employees can be sued in both their official and individual capacities. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Rasmussen sued Deputy Swanson in his official capacity. A suit against a county employee in his or her official capacity is treated as a suit against the county for which the employee works. Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [local governmental] entity."); see Bd. of Cnty. Comm'rs of Bryan Cnty., v. Brown, 520 U.S. 397, 403 (1997) (recognizing that Monell applies to municipalities and other local governmental entities like counties); Hess v. Ables, 714 F.3d 1048, 1054 (8th Cir. 2013).

But "a [county] may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 403 (emphasizing that § 1983's language does not impose vicarious liability based solely on an employer-employee relationship). "Aware that governmental bodies can act only through natural persons, the [Supreme] Court concluded that these governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988). Thus, to establish county liability, the plaintiff must show that the alleged constitutional violation "resulted from (1) an official [county] policy, (2) an unofficial

8

custom, or (3) a deliberately indifferent failure to train or supervise." Kiefer v. Isanti Cnty., 71 F.4th 1149, 1152 (8th Cir. 2023) (quoting Corwin v. City of Indep., 829 F.3d 695, 699–700 (8th Cir. 2016)); see also Monell, 436 U.S. at 694.

A governmental entity is not liable under § 1983 unless there is "a direct causal link between" the entity's policy or custom and the plaintiff's constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989); see also Bd. of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 404 (explaining that the plaintiff must show that the county, "through its *deliberate* conduct, . . . was the 'moving force' behind the injury alleged"). Therefore, to survive summary judgment for a § 1983 claim made against a county or municipality, a plaintiff must show some evidence that the claimed constitutional violation directly resulted from a municipal policy or custom. Szabla v. City of Brooklyn Park, 486 F.3d 385, 392–93 (8th Cir. 2007) (en banc).

**1. Official Policy, Custom, or Practice**

Under § 1983, "policy" refers to "an official policy, a deliberate choice of a guiding principle or procedure made by the [county] official who has final authority regarding such matters." Corwin, 829 F.3d at 700. An official policy includes actions by its legislative body, Connick v. Thompson, 563 U.S. 51, 61 (2011), and decisions or actions by an employee who has "final policymaking authority" as to "the subject matter in question," Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion). Alternatively, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a [county] to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 404; Corwin, 829 F.3d at 699–700. To prove a claim under an existing custom, a plaintiff must show:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to

9

or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Corwin, 829 F.3d at 700 (citation omitted).

As to any official policy, Rasmussen has presented no evidence to suggest that Stanley County Sheriff's Office "created, adopted, or supported any policy" that caused Rasmussen's alleged constitutional violation. See Jackson v. Stair, 944 F.3d 704, 709 (8th Cir. 2019); Doc. 1. Instead, her complaint alleges the Stanley County Sheriff's Office adopted a practice or custom of using excessive force against her and her husband, Wyatt. "[W]hen a plaintiff alleges an unwritten or unofficial policy, there must be evidence of a practice, so permanent and well-settled so as to constitute a custom, that existed." Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (cleaned up) (quoting Davison v. City of Minneapolis, 490 F.3d 648, 659 (8th Cir. 2007)). "The pattern of unconstitutional conduct must be so pervasive and widespread 'so as to have the effect and force of law.'" Id. (quoting Andrews v. Fowler, 98 F.3d 1069, 1075 (8th Cir. 1996)). To establish the pervasive and widespread nature of Defendants' conduct, Rasmussen draws on two occasions when Stanley County tased her husband while trying to arrest him. But "two incidents of excessive force—even assumed to be true—cannot be considered a pattern of widespread and pervasive unconstitutional conduct." Brewington, 902 F.3d at 802; see also Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (holding that two specific complaints along with rumors was not enough to show a policy or custom of unconstitutional conduct); Ulrich v. Pope Cnty., 715 F.3d 1054, 1061 (8th Cir. 2013) ("Generally, an isolated incident of alleged police misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983.") This Court is very familiar with one of the instances where Stanley County tased Wyatt because of his prior lawsuit and the standoff being captured on police body camera; this Court concluded

10

the taser use was not excessive force. See Rasmussen v. Baxter, 21-CV-30021, 2023 WL 6623212, at *5–8 (D.S.D. Oct. 11, 2023). Rasmussen has not asserted facts sufficient to show a continuing widespread, persistent pattern of unconstitutional conduct that would constitute a custom.

That said, "[county] liability may be imposed for a single decision by [county] policymakers." Pembaur, 475 U.S. at 480. But "liability attaches only where the decisionmaker possesses final authority to establish [county] policy with respect to the action ordered." Id. at 481; see Davison, 490 F.3d at 659 ("[A]n unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." (citation omitted)); Praprotnik, 485 U.S. at 123 ("[O]nly those [county] officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."). "[W]hether an official had final policy making authority is a question of state law." Pembaur, 475 U.S. at 483; see also Kiefer, 71 F.4th at 1153 (stating "the trial judge . . . must identify 'those individuals . . . who speak with final policymaking authority for the local government'" (quoting Atkinson v. City of Mountain View, 709 F.3d 1201, 1214–15 (8th Cir. 2013))).

Under state law, Deputy Swanson cannot be a final policy maker for law enforcement within Stanley County. South Dakota law vests final policy making authority for law enforcement with the attorney general or the county sheriff, not his or her deputies.[3] See Praprotnik, 485 U.S.

---

[3] Whether the attorney general for South Dakota, the county sheriff, or both have final policy making authority for law enforcement likely depends on the circumstances and policy decision, and is not a question this court needs to answer. See SDCL § 7-12-4 ("The sheriff shall comply with all orders of the attorney general and at all times, whether on duty under the call of the attorney general or not. The sheriff shall faithfully execute and enforce all the laws of this state . . . ."); SDCL § 7-12-5 ("The sheriff shall furnish to the attorney general from time to time any information regarding conditions in the county that may be required."). For purposes of this case, it is enough to know that final policy making authority rests with the attorney general or the county sheriff, not the sheriff's deputies.

11

112, 126 (1988) (recognizing "that there will be cases in which policymaking responsibility is shared among more than one official or body"). First, deputy sheriffs are subordinate to the county sheriff; the county sheriff is responsible for hiring and firing each deputy. SDCL § 7-12-10 ("The appointment or removal of each deputy . . . shall be made by the sheriff."). Second, the sheriff is statutorily responsible for the acts of each deputy as well as the performance of duties for the sheriff's office as a whole. SDCL § 7-12-11 ("The sheriff is responsible for the acts of each deputy, jailer, and clerk in the performance of the duties of the sheriff's office. The sheriff may summarily relieve any deputy, jailer, or clerk of any or all official responsibilities and duties."). The only time a deputy sheriff could arguably have final policy making authority over county law enforcement is if the sheriff is disqualified or incapacitated. SDCL § 7-12-6 ("If the sheriff is disqualified or incapacitated, a deputy sheriff shall exercise the powers and duties of the office of sheriff so far as such disqualification or incapacity of the sheriff is required or needed."). Because "[county] liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy," Pembaur, 475 U.S. at 483, Deputy Swanson's single act to dispel Rasmussen from interfering with his official duties does not establish final policy for Stanley County. See City of Okla. City v. Tuttle, 471 U.S. 808, 823 (1985) ("[P]olicy generally implies a course of action consciously chosen from among various alternatives . . . ."). Deputy Swanson's act is more appropriately characterized as a discretionary act controlled by Stanley County's use-of-force policy. See Praprotnik, 485 U.S. at 127 ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the [county]."); see also Doc. 37 at 7 (alleging Deputy

Swanson violated Stanley County Sheriff's Office policy). And Rasmussen does not build her claim around the use-of-force policy prompting unconstitutional excessive force toward her.

### 2. Failure to train, supervise, control, or discipline

Rasmussen also makes vague references to Stanley County being liable for failing to properly train or discipline their law enforcement officers. See Doc 1 at 4; Doc. 36-2 at 44–49. To establish county liability on the theory of failure to train, Rasmussen must show the following:

> (1) [the] County's officer-training practices were inadequate; (2) [the] County was deliberately indifferent to the rights of others in adopting these training practices, and [the] County's failure to train was a result of deliberate and conscious choices it made; and (3) [the] County's alleged training deficiencies caused [Rasmussen]'s constitutional deprivation.

Ulrich, 715 F.3d at 1061; see also Setchfield v. St. Charles Cnty., 21-CV-923, 2022 WL 579248, at *8 (E.D. Mo. Feb. 25, 2022). County liability "is at its most tenuous where a claim turns on a failure to train. Connick, 563 U.S. at 58. Ultimately, to state a claim under § 1983, a county's failure to train its employees in a relevant respect must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into to contact.'" Id. at 61 (quoting Canton, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a [ ] policy or custom that is actionable under § 1983.'" Id. (quoting Canton, 489 U.S. at 388).

Here, Rasmussen relies on her factual allegation that Deputy Swanson "assault[ed] a female in a courthouse that is not in custody" to deduce that the County has failed to properly train officers and that additional training is needed. Doc. 1 at 4. Under Ulrich, this is not enough. See 715 F.3d at 1061. Rasmussen has failed to present sufficient evidence to show that there is a genuine dispute of material fact relating to Stanley County's training being inadequate, that its failure to train was the result of deliberate and conscious indifference, and that the inadequate training caused the constitutional violation Rasmussen now alleges. Id. Accordingly, Rasmussen

has failed to establish county liability under Monell and its progeny, and summary judgment is granted in favor of Defendant.

### C. Excessive Use of Force

Even if Rasmussen could demonstrate both standing and municipal liability for the alleged injury, Deputy Swanson's use of force was not unconstitutional. The Fourth Amendment includes the right "to be secure . . . against unreasonable . . . seizures." U.S. Const. amend. IV. When a citizen claims that an officer used excessive force during an arrest or other seizure of their person, that claim is analyzed under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989). "We evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene," Kohorst v. Smith, 968 F.3d 871, 876 (8th Cir. 2020), without "the 20/20 vision of hindsight." Cnty. of Los Angeles v. Mendez, 581 U.S. 420, 428 (2017) (citation omitted). This reasonableness standard respects that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary to a particular situation." Graham, 490 U.S. at 397. The reasonableness inquiry requires careful consideration of the circumstances of each case, including: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Kohorst, 968 F.3d at 876 (quoting Michael v. Trevena, 899 F.3d 528, 532 (8th Cir. 2018)). Courts may supplement this analysis by considering the degree of injury the plaintiff sustains from the alleged use of force. See id.; Atkinson, 709 F.3d at 1210–11 (Courts "do not ignore . . . severe injury" and while "*de minimis* injury does not necessarily foreclose a claim of excessive force under the Fourth Amendment, [the] claim must be based upon more than a *de minimis* use of force." (cleaned up and citation omitted)); But see Setchfield v. St.

Charles Cnty., No. 23-2236, 2024 U.S. App. LEXIS 18948, at *14 n.3 (8th Cir. July 31, 2024) ("*De minimis* force is indeed insufficient to support a Fourth Amendment claim . . . .").

"The use of force is least justified against a nonviolent misdemeanant who does not flee or actively resist and poses little threat to the officers or the public." Kohorst, 968 F.3d at 876 (quoting Jackson, 944 F.3d at 711). In such cases the use of more than *de minimis* force is objectively unreasonable. See generally Kelsay v. Ernst, 933 F.3d 975, 985 (8th Cir. 2019) (Smith, C.J., dissenting) (discussing where use of force by police is unreasonable). That said, some force may be necessary when a person refuses to follow law-enforcement instruction, passively resists, or interferes with law enforcement in the course of their official duties. See Kohorst, 968 F.3d at 876.

Here, Rasmussen was subjected to *de minimis* force, and such *de minimis* force was appropriate given Rasmussen's failing to heed Deputy Swanson's instruction and interfering with him carrying out his official duties. Although Rasmussen's encounter with Deputy Swanson did not result in her own arrest,[4] the Eighth Circuit case of Ehlers v. City of Rapid City, 846 F.3d 1002 (8th Cir. 2017), illustrates why Rasmussen's excessive force claim fails. In Ehlers, the plaintiff's wife and adult children were kicked out of a hockey game for an altercation with another fan and arena security personnel. Id. at 1007. By the time the plaintiff was advised of the dispute, police had arrived and had begun arresting members of his family. Id. The plaintiff approached the arresting officer, who instructed the plaintiff to "step back to the curb." Id. But the plaintiff

---

[4] Although never charged, it appears Rasmussen's conduct may have subjected her to being liable for a misdemeanor under a Fort Pierre, South Dakota, city ordinance, which states, "It is unlawful for any person to touch, retrain, impede, hinder, obstruct or interfere in any manner with any local law enforcement officer, firefighter, ambulance attendant or any employee of the city when on active duty, identified or uniformed, and discharging his or her duties pursuant to employment." See Fort Pierre, South Dakota, Code of Ordinances § 131.07, https://codelibrary.amlegal.com/codes/ftpierresd/latest/ftpierre_sd/0-0-0-3643 (August 15, 2024).

15

disregarded the instruction and proceeded to step closer to the officer. Id. Again, the officer ordered the plaintiff to step back to the sidewalk. Id. The arresting officer then instructed a passing officer to "take this guy, he's not listening." Id. At that point, the plaintiff in Ehlers began walking away from the officers and back towards the arena. Id. The assisting officer twice instructed the plaintiff to put his hands behind his back, but the plaintiff ignored the request and continued walking away. Id. The officer then "executed a spin takedown," grabbing the plaintiff's neck and shoulders, forcing him to the ground. Id. The plaintiff landed on his back, so the officer flipped him onto his hands and knees and commanded that he place his hands behind his back. Id. Two more officers arrived to lend assistance. Id. One crossed the plaintiff's legs and lifted them towards his back to push the plaintiff face down into the ground. Id. The second pushed the plaintiff's left arm out from under him, locking out his elbow before bringing it around to the plaintiff's back to be handcuffed. Id. at 1007–08. Meanwhile, the first officer took his taser and dry stunned the plaintiff in the low back. Id. at 1008. The plaintiff sued the officers asserting that both the takedown and the use of a taser constituted excessive use of force. Id. The Eighth Circuit, however, disagreed, holding that neither were an excessive use of force. Id. at 1011. As for the taser, the Eighth Circuit reasoned that the "officers at the scene reasonably could have interpreted [the plaintiff's] behavior of continuing to lay on his hands and refusing to comply with instructions as resistance and reasonably responded" with the use of a taser, "regardless of whether [the plaintiff] actually intended to resist." Id. at 1011.

Although Rasmussen was not arrested, charged with a misdemeanor, and did not make physical contact with the officers, Deputy Swanson's use of an arm to maintain distance between himself, Wyatt, and Rasmussen was reasonable and indeed far less aggressive than the police's response to the plaintiff's failure to comply in Ehlers. As in Ehlers, Rasmussen's subjective

16

motivation to serve as a witness and prevent mistreatment does not negate how a reasonable officer could perceive her conduct. Rasmussen tried to position herself between Deputy Swanson and Wyatt after Wyatt's arrest and then was trailing law enforcement so close to their heels that the Stanley County State's Attorney worried she might "trip someone by the steps." Doc. 32-4 at 3. And instead of complying with law enforcement's instruction to back away, Rasmussen continued interfering with Deputy Swanson's official duties. Meanwhile, Wyatt began behaving in an uncooperative manner, giving Deputy Swanson even more reason for wanting Rasmussen more than arms-length away from him and Wyatt.

Under these circumstances, there is no genuine issue of material fact, and Deputy Swanson's use of force was *de minimis*, not excessive. This Court grants summary judgment for Deputy Swanson on the claim of excessive force.

**D. State Law Assault and Battery**

Rasmussen's remaining claim against Deputy Swanson is one for assault and battery under South Dakota law. In her complaint, Rasmussen alleges that Deputy Swanson's conduct constituted simple assault in violation of SDCL § 22-18-1. Because "[i]ndividuals cannot institute a civil lawsuit to enforce criminal laws," Foxhoven-Vessel v. Stacy, 22-CV-05071, 2023 WL 2479770, at *5 (D.S.D. Mar. 10, 2023), this Court liberally construed her allegation as a state-law tort claim for assault and battery. Doc. 8 at 8, n.1; see generally Reeves v. Reiman, 523 N.W.2d 78, 82 (S.D. 1994) (defining the necessary elements for an assault and battery tort claim under South Dakota law).

This Court had jurisdiction over Rasmussen's § 1983 claim under 28 U.S.C. § 1331, federal question jurisdiction. But this Court's jurisdiction over a state-law claim depends on supplemental jurisdiction. 28 U.S.C. § 1367. Although a federal district court "shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1376(a), "[t]he district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3). Indeed, "[i]n most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendant state claims are dismissed without prejudice to avoid '[n]eedless decisions on state law . . . as a matter of comity and to promote justice between the parties.'" Ivy v. Kimbrough, 115 F.3d 550, 552–53 (8th Cir. 1997) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Because none of Rasmussen's federal claims survive summary judgment, this Court in the interests of comity and judicial economy exercises its discretion to dismiss without prejudice Rasmussen's state-law assault and battery claim.

Rasmussen suffers no prejudice or unfairness through dismissal without prejudice of her state-law claims. The parties have not undertaken extensive discovery, and no trial date has been set. Moreover, the statute of limitations period under which she can file her claim in state court has not yet run. See SDCL § 15-2-14 ("An action against a sheriff . . . upon liability incurred by the doing of an act in his official capacity and in the virtue of his office" "can be commenced only within three years."); see also SDCL § 15-2-15 (stating that an action for assault and battery must be brought within two years).

### IV.   Conclusion

Thus, for all the reasons discussed above, it is

ORDERED that Defendant's Motion for Summary Judgment, Doc. 31, is granted as to all Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. It is further

ORDERED that Plaintiff's state law claims are dismissed without prejudice.

DATED this 20th day of August, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE